# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# ROCK HILL DIVISION

| | |
|---|---|
| Justin King, | C/A #: 0:22-cv-3614-MGL-PJG |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF DEFENDANT CITY OF CHESTER'S MOTION FOR SUMMARY JUDGMENT** |
| City of Chester, South Carolina and Nicholas Harris, Individually, | |
| Defendants. | |

The Defendant, City of Chester, through their undersigned counsel, respectfully submit the following Memorandum in Support of their Motion for Summary Judgment, pursuant to Rule 56, FRCP.

## STATEMENT OF THE FACTS

During the night of August 31, 2019, to the early morning hours of September 1, 2019, a party was taking place at 154 Main St., within the town limits of Chester. See Incident Report & Supplementals, pp. 1 – 4[1]. As the party was letting out, a fight broke out inside of the venue. See Exhibit 1, p. 3; see also Deposition of Nicholas Harris, pp. 39 – 40[2]; see also Deposition of Joseph Correll, pp. 26 – 30[3]. Nicholas Harris, along with other off-duty Chester Police Department Officers, was working as off-duty security for the party. See Exhibit 2, pp. 29 – 30; see also Exhibit 3, pp. 26 – 30.

---

[1] Please see the Incident Reports and Supplementals attached hereto as Exhibit 1.

[2] Please see the Excerpts from Deposition of Nicholas Harris attached hereto as Exhibit 2.

[3] Please see the deposition from Joseph Correll attached hereto as Exhibit 3.

Sgt. Correll and Officer Camille Smith responded to the call about the fight inside of the venue. See Exhibit 1, p. 2; p. 6; see also Exhibit 3, pp. 27 – 28. After the officers broke up the fight upstairs, as they were leaving the venue another altercation began outside of the venue. See Exhibit 1, pp. 1 – 7: see also Exhibit 2, pp. 29 – 30; see also Exhibit 3, pp. 28 – 29.

Officer LaVar Richardson was standing outside trying to deescalate the situation when the fight broke out. See Body Camera Video of LaVar Richardson, at 1:12 – 2:03[4]; see also Exhibit 3, pp. 28 – 31. On the body camera video, the Plaintiff and two of his friends can be seen engaged in a verbal altercation with other partygoers. See Exhibit 4, at 1:15 – 2:00. The Plaintiff admitted that he was wearing a bright yellow shirt, which is easily identifiable throughout the body camera footage. See Deposition of Justin King, p. 90[5],[6].

The altercation begins to separate; however, the Plaintiff sneaks behind a memorial in the lawn and sucker punches the man with whom he and his friends were arguing. See Exhibit 4, at 1:55 – 2:03. The Plaintiff claims that the man he punched spit on him and that he punched him in self-defense. See Exhibit 5, pp. 37 – 38. When Sgt. Correll and off-duty Sgt. Nicholas Harris came outside and observed the altercation sprawling out into the middle of the intersection of Main Street and Wylie, they had probable cause to arrest everyone (including the Plaintiff) engaged in the physical fighting in the street. See Exhibit 2, pp. 39 – 40; see also Exhibit 3, pp. 28 – 31. Accordingly, even if this Court were to take as true the Plaintiff's allegation, *which he*

---

[4] Please see the Body Camera Video of LaVar Richardson attached hereto as Exhibit 4.

[5] Please see attached the Excerpts from Deposition of Justin King attached hereto as Exhibit 5.

[6] In his deposition, the Plaintiff confused self-defense with adequate provocation; however, regardless of whether Plaintiff was provoked or engaged in self-defense, both would be affirmative defenses to be used to defend himself in a criminal trial after he is arrested and

*makes without any evidence outside of his retroactive and self-serving arguments now,* that he was spit on by the unidentified man he punched is of no consequence in the analysis for false arrest and/or excessive force. See Exhibit 5, pp. 45 - 47; see also Frodge v. City of Newport, 501 Fed.Appx 519, 528 – 29(6th Cir. 2012) (holding that officer had probable cause to arrest individuals he witnessed fighting in the street and that probable cause was not negated by one of the participants claiming self-defense as a justification for fighting). In this case, the responding officers witnessed the Plaintiff assault a third party and engage in a physical fight in the center of an intersection of two busy roadways. See Exhibit 3, pp. 28 – 31; see also Exhibit 4, at 2:00 – 2:30. As such, there was ample probable cause to arrest the Plaintiff for several crimes and/or violations of the law.

Co-Defendant Nicholas Harris saw Sgt. Correll trying to break up the fight. See Exhibit 2, pp. 29 – 30; pp. 39 – 41; see also Exhibit 3, pp. 29 – 30. After Harris witnessed the Plaintiff wildly and violently swinging punches in the street and continuing to behave disorderly after Correll ordered the Plaintiff, his friends, and the people they were fighting to cease their altercation, Harris attempted to get custody over the Plaintiff. See Exhibit 2, pp. 39 – 41. The Plaintiff then actively and physically resisted his arrest when he assaulted Harris by throwing him to the ground. See Exhibit 2, pp. 39 – 41; see also Exhibit 3, pp. 46 – 48. As a result of being thrown to the ground, co-Defendant Harris broke his toe. See Exhibit 2, p. 41; pp. 58 – 60. The Plaintiff then fled from the arrest because he had just committed the violent crime of assaulting an officer. See Exhibit 2, pp. 77 – 78; see also Exhibit 4, at 2:30 – 2:40; see also Screenshot of

---

charged with a crime, and they do not nullify the probable cause the Officers on scene had to arrest him. See Exhibit 5, pp. 37 – 38.

BWC at 2.39 - Harris getting up, Plaintiff still fleeing, Correll begins footchase[7]; see also Screenshot of BWC at 2.40 - Harris still getting up, better view of Plaintiff fleeing, Tucker joins chase[8].

Harris got up off the ground after being thrown there by the Plaintiff. Sgt. Correll, Officer Harris, and Officer Jaquavius Tucker all chased the Plaintiff on foot, and all ordered the Plaintiff to stop running. See Exhibit 2, pp. 43 – 45; pp. 50 – 52; see also Exhibit 3, pp, 35 – 36; see also Affidavit of Jaquavius Tucker, pp. 1 – 2[9]. The Plaintiff did not stop running. Plaintiff was specifically warned that if he did not stop running, he would be tased. See Exhibit 2, pp. 45 – 47; pp. 49 – 51, see also Exhibit 3, pp. 35 – 36; p. 38. The Plaintiff *still* continued his flight.

Sgt. Correll then deployed his taser and hit the Plaintiff in the back with the prongs. See Exhibit 3, pp. 29 – 30. Correll cycled the Taser for one cycle and the Plaintiff fell to the ground, finally becoming complaint to the officers' orders to stop fleeing from this lawful arrest for several crimes. See Exhibit 2, pp. 42 – 43; pp. 52 – 54; see also Exhibit 3, p. 43.

After deploying the Taser, Sgt. Correll dropped the Taser on the ground and walked away to catch his breath. See Exhibit 3, p. 42. Officers Harris and Tucker handcuffed the Plaintiff and escorted him to Tucker's patrol vehicle. See Exhibit 2, pp. 43 – 44.

The Plaintiff claims that, although he lost a contact lens when he fell after being tased, he believes Harris and not Correll tased him because he "rolled over" after being tased and saw a small officer "with blonde hair" that he retroactively recognized as officer Nicholas Harris. See Exhibit 5, pp. 38 – 39. Mind you, the Plaintiff did not recognize Harris at the time of the

---

[7] See Screenshot of BWC at 2.39 - Harris getting up, Plaintiff still fleeing, Correll begins footchase attached hereto as Exhibit 14.

[8] See Screenshot of BWC at 2.40 - Harris still getting up, better view of Plaintiff fleeing, Tucker joins chase attached hereto as Exhibit 15.

incident, but because he saw a news report a few months after this incident from a shooting that occurred in Chester (that the Plaintiff's attorney coincidentally was involved in as well) he was able to identify the officer as co-Defendant Harris. See Exhibit 5, pp. 38 – 39.

Contrary to the Plaintiff's claim, all of the officers who were present at the time the taser was deployed agreed that Correll, and not Harris, tased the Plaintiff. See Exhibit 1, pp. 1 – 7; see also Exhibit 2, pp. 17 – 18; see also Exhibit 3, pp. 29 – 30; see also Exhibit 6, pp. 1 – 2. Furthermore, all of the officers agree the Plaintiffs violent and disorderly behavior, coupled with his *assault of Nicholas Harris* and flight from lawful arrest, justified the use of the taser to gain custody over the Plaintiff to effectuate his lawful arrest. See Exhibit 2, pp. 65 – 66; see also Exhibit 3, pp. 36 – 37; see also Exhibit 6, pp. 1 – 2.

None of the officers made any untrue or reputation damaging statements regarding the Plaintiff. The only statements the Plaintiff complains about are from a third-party website, Fitsnews. See Exhibit 5, pp. 91 – 94; see also https://www.fitsnews.com/2019/09/02/brawl-in-chester-south-carolina-results-in-multiple-arrests/. Furthermore, the Plaintiff has no evidence that anyone from the Defendant City of Chester provided any information to the third-party website for the article he now complains of because the article does not identify this Defendant, or its officers, as the source for the information in the article. See https://www.fitsnews.com/2019/09/02/brawl-in-chester-south-carolina-results-in-multiple-arrests/.

The Plaintiff admitted he was guessing that this Defendants' officers were the sources for the article because they "had to be" based on the information in the article. See Exhibit 5, p. 93. However, the Plaintiff further admitted that there were many other third-party witnesses on the

---

[9] The Affidavit of Jaquavius Tucker is attached hereto as Exhibit 6.

scene such that any number of third parties could have been the source for the allegedly defamatory article. See Exhibit 4, at 1:15 – 2:40; see also Exhibit 5, pp. 92 – 93. It is also important to note the date of the article is September 2, 2019, and, as far as undersigned counsel is aware, no follow up articles were ever published and the Plaintiff has not alleged that any other articles were ever published. See https://www.fitsnews.com/2019/09/02/brawl-in-chester-south-carolina-results-in-multiple-arrests/.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." George v. Fabri, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). "A motion for summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Rule 56(c), SCRCP); accord Trivelas v. S.C. Dep't of Transp., 348 S.C. 125, 130, 558 S.E.2d 271, 273 (Ct. App. 2001); Wells v. City of Lynchburg, 331 S.C. 296, 301, 501 S.E.2d 746, 749 (Ct. App. 1998); see also Tupper v. Dorchester Cnty., 326 S.C. 318, 325, 487 S.E. 2d 187, 191 (1997).

"Summary judgment is appropriate in those cases in which plain, palpable and undisputable facts exist on which reasonable minds cannot differ. It is not sufficient that one create an inference which is not reasonable or an issue of fact that is not genuine." Thompkins v. Festival Ctr. Grp. I, 306 S.C. 193, 194, 410 S.E.2d 593, 593-94 (Ct. App. 1991) (citing Main v. Corley, 281 S.C. 525, 526-27, 316 S.E.2d 406, 407 (1984). Further, the United States Supreme Court has held that:

> The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

> requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations and citations omitted) (emphasis in original). Rule 56(e), SCRCP, further states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

See Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. Builders FirstSource-Southeast Group, 413 S.C. 630, 640, 776 S.E.2d 434, 439-40 (Ct. App. 2015); Lord v. D & J Enters., Inc., 407 S.C. 544, 553, 757 S.E.2d 695, 699 (2014) ("Once the moving party carries its initial burden, the opposing party must do more than rest upon the mere allegations or denials of his pleadings, but must, by affidavit or otherwise, set forth specific facts to show that there is a genuine issue for trial.") (citing Baughman v. Am. Tel. & Tel. Co., 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991)); Sides v. Greenville Hosp. Sys., 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct. App. 2004) ("Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial." (citing Baughman, 306 S.C. at 115, 410 S.E.2d at 545)).

**ARGUMENT**

**1.    This Defendant is entitled to summary judgment on the Plaintiff's claims against this defendant for assault and battery and defamation because he failed file this lawsuit within the applicable statute of limitations.**

This incident occurred on September 1, 2019. See Plaintiff's Complaint, generally; see also Exhibit 1, pp. 1 – 7. Accordingly, any claim for assault and accrued that day. Furthermore, the only alleged defamatory statements came from an article posted on September 2, 2019. See https://www.fitsnews.com/2019/09/02/brawl-in-chester-south-carolina-results-in-multiple-arrests/

This Defendant is a governmental entity. Accordingly, the sole and exclusive remedy for the Plaintiff's claims of assault and battery and defamation against this Defendant must be brought pursuant to the South Carolina Tort Claims Act. See S.C. Code Ann. § 15-78-10 et. seq. Furthermore, even if this action was not required to be brought under the South Carolina Tort Claims Act, the statute of limitations for all defamation actions is two years. See S.C. Code Ann. § 15-3-550.

Under the South Carolina Tort Claims Act, § 15-78-110, the statute of limitations to bring a lawsuit is within two-years of the loss. See S.C. Code Ann. § 15-78-110. The date of the loss is calculated from when the date of the loss occurs, regardless of whether the plaintiff knows the cause of the loss. See Bayle v. South Carolina Dept. of Transp., 344 S.C. 115, 127, 542 S.E.2d 736, 742 (Ct. App. 2001). Accordingly, the statute of limitations ran for Assault and Battery on September 1, 2021, and for defamation[10] of September 2, 2021.

This lawsuit was brought on August 31, 2022. See Plaintiff's Complaint, generally. Accordingly, the Plaintiff filed his lawsuit *almost a full year* outside of the applicable statute of

---

[10] Even if this claim was not required to be brought under the South Carolina Tort Claims Act, the statute of limitations started running at the time the alleged defamatory statements were made, not when the Plaintiff discovered them. See Harris v. Tietex Int'l Ltd., 790 S.E.2d 411, 416 (Ct. App. 2016).

limitations and this Defendant is entitled to summary judgment on the claims the Plaintiff has raised against it.

**2.     This Defendant is entitled to summary judgment on the Plaintiff's defamation claim because all statements made by this Defendant's officers were not false, the Plaintiff cannot show damage to his reputation from this Defendant's officers' statements, and the statements which the Plaintiff complains of are contained in incident reports and/or warrants such that all alleged defamatory statements are entitled to absolutely and/or qualified privilege.**

Even if the Plaintiff's lawsuit can somehow survive missing the statute of limitations by nearly a year, this Defendant is entitled to summary judgment on the merits for the Plaintiff's claim for defamation. In order to prove a claim for defamation, the Plaintiff must show "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." McNeil v. S.C. Dep't of Corr., 404 S.C. 186, 195, 743 S.E.2d 843, 848 (Ct. App. 2013) (quoting Murray v. Holnam, Inc., 344 S.C. 129, 139, 542 S.E.2d 743, 748 (Ct. App. 2001)).

A) Truth as an Absolute Defense

In this case, this Defendant's officers made no false statements about the Plaintiff. The only statements made by this Defendant's officers were limited to incident reports and warrants. See Exhibit 1, pp. 1 – 7; see also Arrest Warrant of Justin King[11]; see also Use of Force Report[12]. Those statements were simply recitations of the observations by the officers involved. Id.

---

[11] Please see Arrest Warrant of Justin King attached hereto as Exhibit 16.

[12] Please see Use of Force Report attached hereto as Exhibit 17.

The statements made about the Plaintiff throughout all the incident reports made by this Defendant's officers were true. Truth is a "complete defense to defamation." <u>Fountain v. First Reliance Bank</u>, 389 S.C. 434, 442 – 43, 730 S.E.2d 305, 309 (2012) (citing <u>Parish v. Allison</u>, 376 S.C. 308, 656 S.E.2d 382 (Ct. App. 2007)).

There are only two statements made about the Plaintiff in this case of any import. First, that he was engaged in a fight in the street. Second, that he resisted his lawful arrest by throwing Nicholas Harris to the ground (which constituted the separate offense of assaulting an officer).

The Plaintiff admits the first claim is true. [13] The Plaintiff admitted that he engaged in a fight with third parties and that he threw the first punch. <u>See</u> Exhibit 5, pp. 48 – 50.

The Plaintiff incredulously contests that second statement; however, the record conclusively proves that second statement to be true. <u>See</u> Exhibit 5, pp. 50 – 51; <u>see also</u> Screenshot of BWC at 2:34 – Harris' Arm[14]; <u>see also</u> Screenshot of BWC at 2.35 - Harris' Head[15]; <u>see also</u> Screenshot of BWC at 2.36 - Harris Grabs Plaintiff[16]; <u>see also</u> Screenshot of BWC at 2.36 - Harris getting pushed off to Plaintiff's right[17]; <u>see also</u> Screenshot of BWC at 2.36

---

[13] The Plaintiff's claim that he punched the third-party male in the face because he was spit on is of no consequence because that argument goes to adequate provocation and/or self defense which are affirmative defenses for the purposes of defending the criminal charges and have no bearing whatsoever on the veracity of the officers' incident reports explaining they found the Plaintiff fighting in the street. <u>See</u> Exhibit 5, pp. 45 – 46.

[14] Please see Screenshot of BWC at 2.34 - Harris' Arm attached hereto as Exhibit 7.

[15] Please see Screenshot of BWC at 2.35 - Harris' Head attached hereto as Exhibit 8.

[16] Please see Screenshot of BWC at 2.36 - Harris Grabs Plaintiff attached hereto as Exhibit 9.

[17] Please see Screenshot of BWC at 2.36 - Harris getting pushed off to Plaintiff's right attached hereto as Exhibit 10.

- Plaintiff Starts Pushing Harris off[18]; see also Exhibit 4, at 2:34 – 2:40; see also Exhibit 2, pp. 40 – 41; see also Exhibit 3, pp. 29 – 30.

The Plaintiff claims that none of the officers laid a hand on him and none of the officers ever tried to arrest him after the fight was broken up by Sgt. Correll. See Exhibit 5, pp. 50 – 51. The Plaintiff's claim is proven incorrect by the deposition testimony of Nicholas Harris, the screenshots from LaVar Richardson's body camera video that show co-Defendant Nicholas Harris grabbing the Plaintiff, and the body camera video footage itself. See Exhibit 2, pp. 40 – 41; see also Exhibit 4, at 2:30 – 2:40; see also Exhibits 7, 8, 9, 10, and 11. Officer LaVar Richardson's body worn camera showed co-Defendant Harris tried to arrest the Plaintiff and the Plaintiff starting to push Harris off. See Exhibit 4, at 2:34 – 2:40. An officer walks into frame and blocks the view of the Plaintiff and Harris' altercation for a fraction of a second, then when the officer walks past, the video shows the Plaintiff starting to run away and co-Defendant Harris getting up off the ground. See Exhibit 4, at 2:34 – 2:40. Accordingly, this Defendant's officers' statements that the Plaintiff resisted his arrest by assaulting an officer were true and, as a result, this Defendant is entitled to summary judgment on the Plaintiff's defamation claim on the merits. See Fountain, supra.

B) This Defendant's Officers' Statements Did Not Damage Plaintiff's Reputation

The Plaintiff cannot show he was harmed in any way by this Defendant's officers' statements because he only complains of one allegedly defamatory article that damaged his reputation and he has no proof, outside of bare speculation, that this Defendant's officers contributed to that article. See Exhibit 5, pp. 91 – 92; see also https://www.fitsnews.com/2019/09/02/brawl-in-chester-south-carolina-results-in-multiple-

---

[18] Please see Screenshot of BWC at 2.36 - Plaintiff Starts Pushing Harris off attached hereto as

arrests/. Defamation may be either actionable per se or not actionable per se. Id. at 442, 730 S.E.2d at 309. Defamation is actionable per se "when the defendant's alleged defamatory statements charge the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." See Goodwin v. Kennedy, 347 S.C. 30, 36, 552 S.E.2d 319, 322–23 (Ct. App. 2001). When a defamatory statement is actionable per se, the plaintiff need not prove general damages—as these damages are presumed—and the defendant is presumed to have acted with common law malice. See Fountain, 398 S.C. at 442, 730 S.E.2d at 309.

In this case it is clear the alleged defamation is not actionable *per se* as none of the above five factors apply to this case. As such damages are not presumed, and the Plaintiff must prove that his reputation has been damaged by the allegedly false statements made by this Defendant's officers.

The Plaintiff explained that the only reputational damages he suffered for his defamation claim came from a "Fitsnews" article. See Exhibit 5, pp. 91 – 93; see also https://www.fitsnews.com/2019/09/02/brawl-in-chester-south-carolina-results-in-multiple-arrests/. That article does not allege that the publisher received any information from this Defendant's officers' statements and the Plaintiff has shown nothing, outside of his bald speculation, that the Defendant's officers produced such information to "Fitsnews." See Exhibit 5, pp. 91 – 93. Both Harris and Correll were asked who they had spoken to about this incident and neither mentioned speaking to any news organization. See Exhibit 2, pp. 32 – 34; see also Exhibit 3, p. 25 – 26.

---

Exhibit 11.

Additionally, the article simply refers to unnamed "sources," as the entities that supplied the information for the article. Crucially, the body camera video shows, and the Plaintiff candidly admits, that there were scores of third parties present at the scene of the incident such that any one of them could have been one of the "sources." See Exhibit 4, at 00:01 – 4:05; see also Exhibit 5, pp. 91 – 93; see also Williams v. Lancaster Cnty, School Dist., 269 S.C. 293, 303 – 04, 631 S.E.2d 286, 292 – 293 (Ct. App. 2006) (holding that the Plaintiff's claim for defamation failed a matter of law because there were many potential witnesses who could have published the allegedly defamatory statement and the Plaintiff could not establish that the Defendant published the alleged defamatory statement about them.). Accordingly, the Plaintiff cannot show that this Defendant's officers made any statements that damaged his reputation in any way such that this Defendant is entitled to summary judgment on the defamation claim on the merits because a reasonable jury could not find for the Plaintiff even when viewing the facts in a light most favorable to him.

### C) This Defendant's Officers' Statements are Entitled to Absolute and/or Qualified Privilege

1) *Absolute Privilege*

The statements regarding the Plaintiff and this incident that were made by this Defendant's officers were limited to incident reports and warrants generated as preliminary documents in the due course of preparing a potential judicial proceeding against the Plaintiff. See Exhibit 1, pp. 1 – 7; see also Exhibit 16; see also Exhibit 17. This Defendant's officers were entitled to an absolute privilege against the Plaintiff's defamation claim as a matter of law because the complained of statements occurred in the due course of a judicial proceeding. See Pond Place Partners, Inc. v. Poole, 351 S.C. 1, 23, 567 S.E.2d 881, 893 (Ct. App. 2002). The

documents required to be generated, such as warrants and affidavits, to initiate and maintain a judicial proceeding are considered "in the due course of a judicial proceeding" are entitled to an absolute privilege. Id.; see also Sanders v. Rollinson, 33 S.C. Law (2 Strob.) 447 (Ct. App. 1848) (stating an action for slander based on a defamatory affidavit was a non-suit; the proper attack is under malicious prosecution); see also Lone v. Brown, 199 N.J.Super. 420, 489 A.2d 1192, 1195 (N.J. App. 1985) ("It is well established that statements, written or oral, made by judges, attorneys, witnesses, parties or jurors in the course of judicial proceedings, which have some relation thereto, are absolutely privileged from slander or defamation actions, even if the statements are made with malice."); Kropp v. Prather, 526 S.W.2d 283, 286 (Tex. Civ. App. 1975) ("Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot form the basis for a cause of action in libel or slander.").

Incident reports similarly fall into that category of absolutely privileged statements made in the due course of a judicial proceeding. In Crowell v. Herring, 301 S.C. 424, 392 S.E.2d 464 (Ct. App. 1990) the South Carolina Court of Appeals held that "the common law rule of protecting statements of judges, parties and witnesses offered in the course of judicial proceedings from a cause of action in defamation is well recognized in [South Carolina]." Crowell, at 429, 392 S.E.2d at 466 – 67.

In Crowell, the Court of Appeals was tasked with determining whether statements made leading up to a formal judicial proceeding were afforded an absolute privilege from subsequent defamation suits like the statements made in pleadings and trial testimony. Id., at 430, 392 S.E.2d at 467. The Court concluded that the *absolute privilege* applied "as to any utterance arising out of the judicial proceeding and *having any reasonable relation to it, including*

*preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it.*" Id. (emphasis added). Accordingly, because the only statements made by this Defendant's officers were contained in incident reports and/or warrants that clearly arose "out of [a] judicial proceeding and [had a ] reasonable relation to it," summary judgment must be granted to this Defendant for the Plaintiff's defamation claim because the statements complained of are protected by an absolute privilege Id.; see Exhibit 1, pp. 1 – 7; see also Exhibit 16; see also Exhibit 17.

    2)    *Qualified Privilege*

Should this Court determine this Defendant's officers were not entitled to an absolute privilege, there is an applicable qualified privilege as well. South Carolina courts have recognized a qualified privilege for communications protecting or promoting law enforcement interests. 20 S.C. Jur. Libel and Slander § 55 (1993) (citing Switzer v. Am. Ry. Express Co., 119 S.C. 237, 112 S.E. 110 (1922)). Moreover, generally, statements are qualifiedly privileged if the communicator has an interest in the subject matter or duty to convey the information and the recipient has a corresponding interest or duty. McBride v. Sch. Dist. Of Greenville Cnty., 389 S.C. 546, 561, 698 S.E.2d 843, 853 (Ct. App. 2010).

This is especially true when the communicator reasonably seeks to protect the recipient's interests or common interest between the communicator and the recipient. Abofreka v. Alston Tobacco Co., 288 S.C. 122, 125 – 26, 341 S.E.2d 622, 624 – 25 (1986). Further, a communication is privileged where it is published in the discharge of a legal, social, or moral duty. Montgomery Ward & Co. v. Watson, 55 F.2d 184, 187 (4th Cir. 1932); Flowers v. Zayre Corp., 286 F. Supp. 119, 121 (D.S.C. 1968); Conwell v. Spur Oil Co., 240 S.C. 170, 178-79, 125 S.E.2d 270, 274-75 (1962).

In this case the Plaintiff has the burden of proving that this Defendant's officers abused their privilege, which he cannot do. The only statements this Defendant's officers made about the Plaintiff's arrest were contained in incident reports and warrants, that were made in good faith, did not go beyond what was reasonable, and were not recklessly made with a disregard for the Plaintiff's rights. See Fountain, 389 S.C. 443, 44 – 445, 730 S.E.2d 305, 309 – 10; see also Exhibit 1, pp. 1 – 7; see also Exhibit 16; see also Exhibit 17. Accordingly, this Defendant's officers' statements regarding the Plaintiff for this incident are entitled to qualified privileged statement. See Abofreka, supra.

Based on all of the above, there were no defamatory statements made and the Plaintiff cannot establish the requisite elements to prove defamation. Even if the Plaintiff could prove the alleged statements were defamatory, those statements were privileged. Therefore, this Defendant is entitled to summary judgment on the Plaintiff's defamation claim.

**3.     This Defendant is entitled to summary judgment for assault and battery claims because the Plaintiff's violent behavior while fighting in the middle of the road, his violent behavior when he resisted his lawful arrest, and his active flight from his lawful arrest warranted the deployment of Joseph Correll's taser to effectuate the Plaintiff's arrest.**

Even if the Plaintiff's lawsuit can somehow survive missing the statute of limitations by nearly a year, this Defendant is entitled to summary judgment on the merits for the Plaintiff's assault and battery claim as well. In South Carolina, "a law enforcement officer who uses *reasonable force* in effecting a lawful arrest is not liable for assault or battery." McCoy v. Columbia, 929 F.Supp. 541 (D.S.C. 2013) (emphasis added) (citing Roberts v. City of Forest Acres, 902 F.Supp. 662, 671 (D.S.C. 1995); also citing Moody v. Ferguson, 732 F.Supp. 627,

632 (D.S.C. 1989)). Furthermore, the Fourth Circuit Court of Appeals has clarified when the use of a taser to effectuate an arrest is reasonable. This case falls squarely within the Fourth Circuit's framework; and as a result, the use of the taser in this case did not constitute assault and battery.

In Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892 (4th Cir. 2016), the Fourth Circuit Court of Appeals explained that the use of a taser to effectuate an arrest depends on the "reasonableness" of the circumstances. Pinehurst, at 899. The Fourth Circuit explained "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Bell v. Wolfish, 441 U.S. 520 (1979). But "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Pinehurst, at 899. Then the Fourth Circuit enumerated a three factor test to guide this balancing., "First, we look to 'the severity of the crime at issue'; second, we examine the extent to which 'the suspect poses an immediate threat to the safety of the officers or others'; and third, we consider 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" Id. (internal citations omitted).

In this case, all three of the factors weighed in favor of deploying a taser to effectuate the Plaintiff's arrest. First, the Plaintiff assaulted a police officer. See Exhibit 2, pp. 29 – 30; pp. 40 - 41; see also Exhibit 1, pp. 1 – 7; see also Exhibit 3, pp. 28 – 29; pp. 77 – 79. Assaulting an officer is a "severe offense." See Johnson v. City of San Antonio, 2023 WL 3019686, 11 (5th Cir. 2023) (holding that assault of an officer is a severe crime, especially when considering the circumstances of a riot.). The video footage supports the conclusion that the Plaintiff assaulted co-Defendant Harris. The Plaintiff violently hurled co-Defendant Harris to the ground and broke his toe. See Exhibit 2, pp. 29 – 30; pp. 40 – 41; see also Exhibit 4, at 1:31 – 2:40; see also

Exhibits 9, 10, 11, and 12. Additionally, this violent physical resistance put the officers on notice that if they tried to arrest him by going hands on again, the Plaintiff was likely to physically resist that attempt with violence as well. See Exhibit 6, pp. 1 – 2.

The second factor similarly shows that deploying the taser was reasonable because the Plaintiff amply demonstrated he was a threat to the officers on the scene and the others around him. See Exhibit 4, at 1:31 – 2:40. In front of officers, the Plaintiff sucker punched a third party and then proceeded to fight with him in the street. See Exhibit 4, at 1:55 – 2:27. After that he continued to act aggressively even when officers were trying to break up the fight he started and deescalate the deteriorating situation. See Exhibit 2, pp. 35 – 36. Finally, he threw Nicholas Harris to the ground, breaking Harris' toe. See Exhibit 2, pp. 29 – 30; pp. 40 - 41; see also Exhibit 1, pp. 1 – 7; see also Exhibit 3, pp. 28 – 29; pp. 77 – 79; see also Exhibit 4, at 2:27 – 2:40; see also Exhibits 9, 10, 11, and 12. All of those actions demonstrated the Plaintiff's violent behavior that created a threat to all of those around him which also weighed in favor of Correll deploying his taser.

The third factor is not in dispute. All parties agree that the Plaintiff was tased as he actively fled from the scene. See Exhibit 2, pp. 49 – 52; see also Exhibit 3, pp. 31 – 39; see also Exhibit 4, at 2:39 – 4:05; see also Exhibit 5, pp. 50 – 52. The Plaintiff may now claim that he did not know he was being chased by the police, after having thrown and officer on the ground, but: 1) there is no evidence of that claim other than the Plaintiff's retroactive self-serving claims now, and 2) even if we were to take the Plaintiff's claim is true, it is of no consequence as to whether the Plaintiff knew he was fleeing from a lawful arrest when he ran away. See Exhibit 5, pp. 52 – 53. The Pinehurst test states that if a suspect is actively fleeing an arrest, that consideration makes deploying a taser more reasonable. See Pinehurst, at 899. The test does not require that a

suspect flees arrest "*knowingly,*" such a requirement would allow for suspects to make retroactive self-serving claims of ignorance after the fact that would always weigh against deploying a taser to effectuate an arrest. The test is objective in that it evaluates whether a reasonable officer's belief based on the totality if circumstances, not the suspects subjective belief that he or she is being chased. Id. (holding that a "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person is "properly analyzed under the Fourt Amendment's objective reasonableness standard.") (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)).

In this case, Sgt. Correll and Ofc. Tucker issued loud verbal commands to stop and Correll specifically warned that if the Plaintiff did not stop running, he would be tased. See Exhibit 2, pp. 49 – 52; see also Exhibit 3, pp. 31 – 39; see also Exhibit 6, pp. 1 – 2. As such, due to the Plaintiff's active flight from his proper arrest that he physically and violently resisted, the third factor of the Pinehurst test shows that the use of the taser to effectuate the Plaintiff's arrest was reasonable under these circumstances. See Pinehurst, at 899 (explaining that the third factor of the test is "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.").

Accordingly, this Defendant is entitled to summary judgment on the Plaintiff's assault and battery claim on the merits because the use of the taser to effectuate his arrest was reasonable under the circumstances such that the claim for assault and battery cannot survive this motion.

## **CONCLUSION**

By reason of the foregoing arguments, this Defendant is entitled to summary judgment on all of the Plaintiff's claims.

MORRISON LAW FIRM, LLC

By: _s/ David L. Morrison_
    David L. Morrison (Bar #4101)
    7453 Irmo Drive, Suite B
    Columbia, South Carolina 29212
    Phone:  (803) 661-6285
    Fax:      (803) 661-6289
    E-mail:  david@dmorrison-law.com

***Attorney for Defendant City of Chester***

Columbia, South Carolina

_March 21_, 2024