IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Justin King, | ) | C/A No. 0:22-3614-MGL-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| City of Chester, South Carolina; Nicholas Harris, | ) | |
| Defendants. | ) | |

Plaintiff Justin King filed this civil rights action in the Chester County Court of Common Pleas, raising claims pursuant to 42 U.S.C. § 1983 and state law tort claims against the defendants. The defendants removed the action to this court. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motions for summary judgment. (ECF Nos. 31 & 32.) King filed a consolidated response in opposition to the motions (ECF No. 40), and the defendants filed replies (ECF Nos. 43 & 44). The court heard oral argument on the motions on August 27, 2024. Having reviewed the record presented and the applicable law, the court concludes that summary judgment should be granted to the defendants as to King's federal claims and that the state law claims be remanded to the Chester County Court of Common Pleas.

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to the plaintiff, to the extent they find support in the record. King was chased, tasered, and arrested by City of Chester police officers in the early morning hours of September 1, 2019, following King's involvement in a fistfight on a city street. The fight occurred after a party at an event hall. Several

Chester police officers—including Defendant Nicholas Harris—were already on scene because they were working as security for the party. As partygoers exited the event after midnight and spread out into the city's streets, King and another party attendee got into an argument and began throwing punches at each other in the middle of the street.

Officer Lavar Richardson unsuccessfully attempted to diffuse the situation and called for backup. As King and the other person traded punches, other police officers arrived and a crowd formed near the fight. King and the other person separated, and Officer Harris attempted to intervene by grabbing King, but Harris fell down, allowing King to flee down the street in a sprint. Harris broke his toe when he fell. Three officers—including Harris, who started the chase late as he was getting up from off the ground—ran after King. Officer Richardson's body camera recorded the fight and King fleeing, but it did not capture the subsequent chase of King down the street, and the officers chasing King either were not wearing body cameras or the body cameras were not recording.

The officers chased King down one city block and King took a left at the next intersection, but before King could reach the end of that block, he was tased and fell to the ground. All three officers chasing King claim they gave King several commands to stop before the taser was deployed. They also claim Officer Joseph Correll deployed the taser. King, however, claims he did not know he was being pursued by any officers and he did not hear any commands. King also claims *Harris* deployed the taser. According to King, when he was tased and fell, he immediately turned around and saw Harris holding the taser. Officer Correll testified that after he tased King he dropped the taser to catch his breath. The officers all claim that Harris then picked up the taser from the ground and walked toward King. Regardless, King was injured by the fall.

Harris handcuffed King and the third officer, Jaquavius Tucker, escorted King to a patrol vehicle. An officer drove King to a hospital so that King could be treated for injuries sustained in the fall. Officer Correll later swore out an arrest warrant for King, charging him with resisting arrest and assaulting a police officer in violation of S.C. Code Ann. § 16-9-320. The latter charge was based on the allegation that King pushed Harris down before King fled. Officer Correll also issued King two uniform traffic tickets for municipal violations of disorderly conduct and failure to stop on police command. See City of Chester Code of Ordinances §§ 38-3 and 38-10.

King brought this lawsuit against Harris and the City of Chester. King raises claims of false arrest and excessive force in violation of the Fourth Amendment against Harris pursuant to 42 U.S.C. § 1983. He also raises state law claims of assault and battery and defamation against Harris and the City of Chester.

## DISCUSSION

**A.     Summary Judgment**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

B.      Defendants' Motions for Summary Judgment

   1.      Federal Claims

A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).  To establish a claim under § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Here, King's claims of false arrest and excessive force are both analyzed under the reasonableness standard of the Fourth Amendment.  See Graham v. Connor, 490 U.S. 386, 397 (1989) (stating that the Fourth Amendment's prohibition on unreasonable seizures includes the right to be free from seizures effectuated by excessive force); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (stating that claims for false arrest and false

imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

      a.      **False Arrest Claim**

The defendants argue that Harris and the other officers at the scene had probable cause to arrest King for multiple criminal offenses, and therefore, Harris is entitled to summary judgment on King's false arrest claim. The court agrees.

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government and requires warrants be issued only upon a finding of probable cause. U.S. Const. amend. IV. To establish a § 1983 claim for false arrest in violation of the Fourth Amendment, the plaintiff must show the seizure of his person was unreasonable, *i.e.*, he must show that he was arrested without probable cause. See Rogers, 249 F.3d at 294; see also Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) (stating that to establish an unreasonable seizure under the Fourth Amendment, the plaintiff must show he was arrested without probable cause). Thus, there is no § 1983 claim for false arrest unless the officer lacked probable cause. See Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974).

A law enforcement officer has probable cause to effect a warrantless arrest where the totality of the facts and circumstances known to the officer at the time of the arrest would cause a reasonable officer to believe that a criminal offense has been committed. Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004); Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017). Probable cause inquiries turn on two factors: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct. Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). Probable cause requires more than bare suspicion, but it requires less than evidence necessary to convict. Munday, 848 F.3d at 253.

Because Harris participated only in the initial arrest of King—handcuffing him and leading him to a police cruiser—as opposed to charging King by swearing out arrest warrants, the court here is not concerned with whether probable cause existed to support the ultimate charges against King.  See Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 555 (4th Cir. 2017) ("Allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued—e.g., post-indictment or arraignment—are considered a § 1983 malicious prosecution claim.").  The court need only review whether Harris had probable cause at the time of the initial seizure to believe that King had committed or was committing a crime.[1]  See Devenpeck, 543 U.S. at 152-53; Smith, 848 F.3d at 253.  And importantly, on a false arrest claim, the existence of probable cause as to *any* crime will defeat the plaintiff's claim.  See D.C. v. Wesby, 583 U.S. 48, 55 n.2 (2018) ("Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest."); cf Chiaverini v. City of Napoleon, Ohio, 602 U.S. __, 144 S. Ct. 1745, 1748 (2024) (stating that where a plaintiff pursues § 1983 *malicious prosecution* claims on multiple charges, the existence of probable cause to support one charge does not insulate the defendant from a malicious prosecution claim as to the other charges).

As argued by Harris, (Harris Mem. Supp. Summ. J., ECF No. 32-1 at 7-8), the undisputed facts show that at the time of the arrest, the officers were aware that King was actively fighting on a public street and then running from the police in violation of several criminal laws.  King's throwing punches constituted at least third-degree assault and battery under South Carolina law,

---

[1] Harris argues he was not the "arresting officer" because he did not swear out the warrant or officially charge King. (Harris's Mem. Supp. Summ. J., ECF No. 32-1 at 5.)  As explained above, that distinction would matter for a malicious prosecution claim.  Because Harris was an active participant in the initial detention of King, a false arrest claim is potentially cognizable against him.  See Humbert, 866 F.3d at 555.

which makes it unlawful to injure another or attempt to injure another.  See S.C. Code Ann. § 16-3-600 (defining assault and battery and varying degrees of criminality).  King was arguing with another person in a public space that resulted in a fistfight on a public street in spite of a police officer's admonishments.  See City of Chester Code of Ordinances § 38-10 (defining disorderly conduct in part as "speaking grossly insulting words in a direct personal confrontation in a manner that genuinely tends to incite an immediate and violent breach of the peace," "[t]o knowingly and willfully engage in any overt physical conduct which interferes with the pursuit of a lawful occupation or activity of another person," or "[w]thout lawful permission to congregate with another or others on any public way so as to impede the flow of pedestrian or vehicular traffic, and to refuse to clear such public way when ordered to do so by any Law Enforcement Officer" all while "knowing or having reason to know that it will tend to promote or provoke a fight, assault, or brawl, or be disruptive of the lawful conduct or assembly of other persons").  King also ran from police officers who were trying to detain him after he was told to stop fighting.  See S.C. Code Ann. § 16-9-320 (resisting arrest); City of Chester Code of Ordinances § 38-3 (failure to stop on police command).

In response, King argues Harris could not have had probable cause to arrest him for assault or disorderly conduct because the body camera video and his own testimony establishes that he was acting in self-defense.  Initially, the court disagrees that the body camera video and King's testimony are *conclusive* of anything, much less that King was acting in self-defense.  Self-defense under South Carolina law generally requires the plaintiff to show that he was in danger of sustaining serious bodily injury and had no means of avoiding the danger.  State v. Bryant, 520 S.E.2d 319, 322 (S.C. 1999).  King testified that the fight started because his friends were arguing with other people after the party, and he only got involved to deescalate the situation.  (King Dep.

at 43-44, ECF No. 32-3 at 9-10.) King admits in his deposition that he threw the first punch after being spit on. (Id. at 46, 48-49, ECF No. 32-3 at 12, 14-15.) King's own testimony tends to show that King initiated the assault in response to offensive behavior rather than an actual danger of serious bodily injury. Also, the video shows that rather than withdrawing from the argument to avoid danger, King stayed the middle of it and was the first to throw a punch. Thus, the evidence in the record does not conclusively prove that the officers knew King was acting in self-defense.

Even assuming self-defense can be shown here (and the defense would not apply to the resisting arrest and failure to stop on police command offenses anyway), the mere existence of facts to support a legal defense does not vitiate probable cause. See Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000) ("Reasonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.' ") (quoting Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991)); United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998) ("While probable cause requires more than 'bare suspicion,' it requires less than that evidence necessary to convict."). At the time of the arrest, the officers knew that King had engaged in a fistfight on a public street and disobeyed an officer's commands to stop the fighting. A reasonable officer on the scene could have believed that King was guilty of assault or disorderly conduct, even if the officer was also aware that King may have acted in self-defense. See, e.g., Yousefian v. City of Glendale, 779 F.3d 1010, 1014 (9th Cir. 2015) ("The mere existence of some evidence that could suggest self-defense does not negate probable cause."); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (rejecting the plaintiff's argument that his "loud protestations of innocence" vitiated the officer's probable cause to believe that the plaintiff assaulted someone rather than acted in self-defense); Bonnell v. Beach, 401 F. Supp. 3d 663, 677 (E.D. Va. 2019) (rejecting the proposition that "self-defense

defeats the defense of probable cause as a matter of law" in a § 1983 case and concluding that the arrestee's claim of self-defense does not negate probable cause where other evidence supports a finding of probable cause by the officer on-scene"). Therefore, no reasonable jury could find that Harris lacked probable cause to arrest King for assault, disorderly conduct, or resisting arrest.

### b. Excessive Force Claim

Harris argues that he is entitled to summary judgment on King's excessive force claim because (1) he did not tase King; (2) the tasing was not unreasonable under the Fourth Amendment; and (3) regardless, he would be entitled to qualified immunity. The court need not address the first two arguments because, even assuming Harris tased King, the court concludes that Harris would be entitled to qualified immunity.[2]

**Qualified Immunity Generally.** Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[2] Briefly, the parties disagree as to who tased King. All three officers chasing King testified that Officer Correll—who is not a defendant—tased King, whereas King testified that though he was running away and did not see the taser when it was deployed, after he fell to the ground he turned over immediately and saw Harris holding the taser. This dispute is not material, however, as qualified immunity shields the officer even accepting Plaintiff's version of events that it was Harris rather than Correll. See Fed. R. Civ. P. 56.

have known.[3]  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct.  Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).  Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand.  Id. at 235, 242.

Moreover, "[w]hen a court addresses qualified immunity in the summary judgment context, it can condense its analysis."  Pittman v. Nelms, 87 F.3d 116, 119 (4th Cir. 1996).  The court need not determine directly whether the plaintiff's evidence shows a constitutional violation, because it can combine the two prongs of the qualified immunity inquiry by asking whether "the plaintiff has 'allege[d] the violation of a *clearly established* constitutional right.' "  Id. (quoting Siegert v. Gilley, 500 U.S. 226, 231 (1991)) (alteration and emphasis in original).  If so, the court must then determine whether the defendant knew or should have known that his conduct was illegal.  Id. (citing DiMeglio v. Haines, 45 F.3d 790, 795 (1995)).  The Fourth Circuit has described this inquiry as whether "a reasonable official would understand that what he is doing violates" the

---

[3] The court rejects King's argument that qualified immunity does not apply here because Harris was off-duty and working security for an event.  (See Pl.'s Resp., ECF No. 40 at 19-20) (relying on Bracken v. Okura, 869 F.3d 771 (9th Cir. 2017)).  Bracken is not controlling authority, but regardless, it is distinguishable.  In Bracken, an off-duty police officer hired by a hotel to provide security at an event purportedly violated Bracken's rights while issuing a trespass warning to Bracken—an unauthorized party guest.  Bracken, 869 F.3d at 774.  In finding qualified immunity did not apply to the officer, the United States Court of Appeals for the Ninth Circuit noted that the officer was not acting in the performance of public duties or carrying out the work of government, noting specifically that the officer was not preventing Bracken from committing a crime.  Id. at 777-78.  Here, on the other hand, Harris was called to a scene outside of the event for which he was providing security and chased and arrested King for a crime that occurred outside of the event on a public street.

Constitution.  Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005) (quoting Saucier, 533 U.S. at 202).

**Excessive Force Law Generally.**  A claim that a law enforcement officer has used excessive force during an arrest, investigatory stop, or other seizure of a person is properly analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution.  Graham, 490 U.S. at 394-95.  The Fourth Amendment test is an objective one; however, it is not capable of precise definition or mechanical application.  Id. at 396-97.  It requires the court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397; see also Yates v. Terry, 817 F.3d 877, 884-85 (4th Cir. 2016); Yarborough v. Montgomery, 554 F. Supp. 2d 611, 617 (D.S.C. 2008).  The court must balance " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the importance of the governmental interest alleged to justify the intrusion."  Yarborough, 554 F. Supp. 2d at 617 (quoting Graham, 490 U.S. at 396); see also Yates, 817 F.3d at 884-85.

Courts must examine the totality of the circumstances in determining whether the force used was objectively reasonable.  Yates, 817 F.3d at 885.  Therefore, application of this standard "requires careful attention to the facts and circumstances of each particular case."  Graham, 490 U.S. at 396; see also Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003).  In Graham, the Supreme Court established several factors to consider, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Yates, 817 F.3d at 885 (quoting Graham, 490 U.S. at 396).  Courts must view the evidence " 'in full context, with an eye toward the proportionality of the force' in light of all the circumstances."  Yates, 817 F.3d at 883 (quoting

Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

**Defining the Right at Issue.** In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation marks omitted). Moreover,

> [a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (first alteration added). "Although the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." Waterman, 393 F.3d at 476 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)).

In analyzing this prong, a court in this district must first look to case law from the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and the South Carolina Supreme Court, and in the absence of binding authority, the court must next consider whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority. Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 543 (4th Cir. 2017). The "salient

question" " 'is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' " Tolan v. Cotton, 572 U.S. 650, 656 (2014) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (internal quotation marks, citations, and alterations omitted); see also Omeish v. Kincaid, 86 F.4th 546, 555 (4th Cir. 2023) (noting that the Supreme Court has emphasized the need to identify caselaw addressing similar circumstances in excessive force cases, that is, cases where an officer acting under similar circumstances was held to have violated the Fourth Amendment).

**Conduct at Issue.** Thus, applying the Graham factors, the court must define the right at issue in the context of the specific factual situation that confronted Harris. Here, King was tased while he was fleeing after a fight in a crowded street. King was actively attempting to evade arrest by fleeing on a city street at night, immediately after striking blows with his fists in a street fight with at least one other person.[4] The officers did not tase him until he was away from the crowd more than a block away. The officers had no reason to believe that King was armed. In light of these facts, the court defines the pertinent inquiry as follows: Was it clearly established in 2019 that police, having just observed a person commit violence against another on a crowded public street at night, cannot tase that person as he runs away? For the reasons that follow, the court

---

[4] Viewing the facts in the light most favorable to the Plaintiff, as the court must do at this stage, the court assumes for the sake of this analysis that King did not shove or assault Harris prior to fleeing, as King testified.

cannot say that a reasonable official would understand that doing so violates the Constitution. Waterman, 393 F.3d at 476.

"[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id.; see also Yarborough, 554 F. Supp. 2d at 617. "This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders." Yarborough, 554 F. Supp. 2d at 617. The Supreme Court has made clear that an officer may not use *deadly* force to prevent an arrestee from escaping and the Fourth Circuit has made clear that an officer may not tase a suspect to effect an arrest of a non-violent suspect who is offering only *passive* resistance. See Tennessee v. Garner, 471 U.S. 1, 11 (1985) (deadly force); Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 902 n.8 (4th Cir. 2016) (tasing). But no settled, controlling authority stated in 2019 that an officer may not tase a suspect fleeing after a public fistfight to prevent an escape and effect an arrest.

In 1985, the Supreme Court stated plainly that "[t]he use of *deadly* force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." Garner, 471 U.S. at 11 (emphasis added). Thus, it was clearly established then that shooting a fleeing suspect, even a violent felon, to prevent the suspect's escape, amounted to excessive force. But Garner does not squarely govern the situation that confronted Harris, who did not employ deadly force to seize King.

The use of a taser is not deadly force, but in 2016, the Fourth Circuit stated that a taser is a "severe and injurious use of force" that requires "significant circumspection." Est. of Armstrong, 810 F.3d at 902 n.8. The Fourth Circuit stated in Estate of Armstrong that "a police officer may *only* use serious injurious force, like a taser, when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the

use of force." Id. at 905.  Even where an officer has authorization to arrest a subject, the mere fact that the subject is unrestrained does not justify the use of a taser.  Id. at 904 ("Painful, injurious, serious inflictions of force, like the use of a taser, do not become reasonable simply because officers have authorization to arrest a subject who is unrestrained.").

But, just as in Garner, the underlying facts in Estate of Armstrong do not "squarely govern" the case at hand.  See Kisela v. Hughes, 584 U.S. 100, 104 (2018) (*per curiam*) ("Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.") (internal quotation marks omitted).  In Estate of Armstrong, officers tased a mentally ill man—Armstrong—who was subject to a civil order of involuntary commitment but offered passive, non-violent resistance to officers' attempt to seize him. Armstrong suffered from bipolar disorder and paranoid schizophrenia and his doctor had judged him to be a danger to himself but not to others.  Estate of Armstrong, 810 F.3d at 896.  The officers were called to help return Armstrong to a hospital from which he had just fled after he had willingly checked-in to the hospital earlier that day.  Id.  The officers found Armstrong near an intersection by the hospital's main entrance and Armstrong was calm and cooperative but acting strangely (such as eating grass and putting cigarettes out on his tongue).  Id.  When the officers attempted to seize Armstrong, he sat down and wrapped himself around a four-by-four stop sign post and refused to budge when the officers attempted to pry him from the post.  Id.  Rather than engage in further conversation with Armstrong, in less than one minute, the officers announced that he would be tased if he did not let go of the post and then tased him when he refused.  Id. at 897.  The officers tased Armstrong five separate times over a period of two minutes.  Id.  Thus, in contrast to the case at hand, the officers in Armstrong, in relative calm, confronted a mentally ill man offering passive,

non-violent resistance to seizure for a civil commitment. Harris,[5] on the other hand, was attempting to effectuate an arrest based on violence that was witnessed by police, confronting a fleeing suspect after a brawl on a crowded city street late at night.

The court observes that Estate of Armstrong's legal principles on the proper use of a taser may provide the rule that ultimately would determine, on the merits, whether excessive force was used in this case. Compare id. at 905 ("[A] police officer may *only* use serious injurious force, like a taser, when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force."), with id. at 905 n.9 (noting the fact intensive nature of Graham and stating that the court's holding does not rule out the possibility of a factual scenario where the officer could reasonably conclude that the resistance presents some immediate danger despite its nonviolent character). But the mere fact that Estate of Armstrong may ultimately be dispositive of the issue in court does not mean that the unlawfulness of the officer's conduct on the scene was settled. See D.C. v. Wesby, 583 U.S. 48, 63 (2018) ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."); Omeish v. Kincaid, 86 F.4th 546, 555 (4th Cir. 2023) ("[A] precedent is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established.") (internal quotation marks and alterations omitted); id ("[O]fficers often find it difficult to determine how the Fourth Amendment's general reasonableness standard applies to the particular factual circumstances confronting them."); see also Kisela, 584 U.S. at 105 ("Precedent involving *similar facts* can help move a case beyond the

---

[5] Again, the court assumes for purposes of resolving this motion that Harris deployed the taser.

otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful.") (emphasis added) (internal quotation marks omitted).  While the court need not identify "a case directly on point," Estate of Armstrong does not put the lawfulness of Harris's conduct "beyond debate."  Wesby, 583 U.S. at 64 (quoting al-Kidd, 563 U.S. at 741).  Consequently, even if Harris was the officer who tased King, Harris would be entitled to qualified immunity on King's excessive force claim.

    2.    **State Claims**

In light of the court's recommendation that summary judgment should be granted as to King's federal claims, the court should exercise its discretion to remand the state law claims.  See 28 U.S.C. § 1367(c) (authorizing a district court to decline to exercise jurisdiction over a supplemental claim if the court has dismissed all claims over which it had original jurisdiction); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988) (discussing the factors in deciding whether to exercise supplemental jurisdiction after removal).

## RECOMMENDATION

Based on the foregoing, the court recommends Harris's motion for summary judgment be granted as to King's federal claims and that this case be remanded to the Chester County Court of Common Pleas.

August 30, 2024  
Columbia, South Carolina

                       Paige J. Gossett  
                UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).